IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| URI ALCANDER,<br><br>              Plaintiff,<br><br>    vs.<br><br>CREIGHTON UNIVERSITY, and JOSEPH V. FRANCO, JR.,<br><br>              Defendants. | **8:25CV572**<br><br><br>**MEMORANDUM AND ORDER** |

This case comes before the Court on Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim. Filing No. 9. For the reasons stated herein, the Court grants the motion, in part, and denies the motion, in part.

## I.    BACKGROUND

Plaintiff, Uri Alcander ("Alcander"), was a student at Creighton University School of Dentistry from 2019 until he was dismissed from the program in 2021. Filing No. 8 at 2. Alcander is an ethnic minority. *Id*. Creighton University ("Creighton") is a private university located in Omaha, Nebraska. *Id.* at 1. Dr. Joseph V. Franco, Jr. ("Dr. Franco") served as the Associate Dean of Clinical Services and was an Associate Professor at the Creighton School of Dentistry during the relevant times herein. *Id*.

On January 14, 2021, Alcander was involved in an automobile accident which resulted in "whiplash and back and neck injuries," as well as numbness in his hands. Filing No. 8 at 2. After the accident, Alcander required physical therapy and other treatments for an undisclosed period. *Id.* at 2. On April 5, 2021, while working at the dental school clinic, Alcander experienced numbness in his hands. *Id*. He immediately sought medical treatment, and his medical provider instructed him to take three weeks off

1

school/clinical duties due to a cervical spine disorder and spinal root compression. *Id*. During this time, Alcander communicated with Dr. Colette O'Meara-McKinney, who approved his medical absences and advised that they would not affect his status within the program. *Id.* at 3. On May 10, 2021, Alcander's doctor authorized him to return to school and clinical duties without restrictions. *Id.* at 2. Subsequently, Alcander continued his education and clinical duties at Creighton, but Dr. Franco did not assign him additional patients and removed patients from Alcander's schedule. *Id.* at 3. Alcander believes these actions were taken due to his medical absences and/or his race or national origin. *Id*. Alcander attempted to confer with Dr. Franco about these issues, but his requests were ignored. *Id*.

On August 24, 2021, Alcander attended his duties at the Creighton dental clinic. Filing No. 8 at 3. Later that evening he reported to the emergency room where he tested positive for COVID-19. *Id*. Alcander states he immediately notified Creighton and promptly provided medical documentation to them indicating he could not return until September 7, 2021. *Id.* at 3–4. Alcander did not participate in clinical duties because under CDC guidelines and Creighton's policies, he was forbidden to do so. *Id.* at 4. Also on August 24, 2021, Alcander received an academic misconduct hearing notice. *Id*. The academic misconduct notice was based on assertions by Dr. Franco that Alcander was absent from the medical clinic on August 24, 2021, and that Alcander had appointed a patient in prosthodontics with a treatment plan that was over one year old. *Id*. Alcander denied those allegations and at some point, before the hearing, Dr. Franco amended his statement to include allegations that Alcander neglected his clinic patients and had excessive absences. *Id*.

On September 20, 2021, Creighton's Academic Misconduct Committee met to discuss Alcander's clinical attendance and whether he neglected to provide proper care for his clinical patients. Filing No. 8 at 5. Following the hearing, the committee recommended to the Dean of the School of Dentistry that Alcander be dismissed from the program. *Id*. Alcander appealed to Provost Mardell A. Wilson, who upheld Alcander's dismissal on October 26, 2021. *Id*. Alcander did not receive a refund of his tuition payments following his dismissal. *Id*.

Alcander asserts seven claims under Nebraska state and federal law. Defendants seek dismissal of Count 1 (breach of contract), Count 4 (Title VI, race/color/national origin discrimination), Count 5 (intentional interference with a business contract), Count 6 (negligent misrepresentation), and Count 7 (request for declaratory judgment). Filing No. 8 at 5–15.

**ANALYSIS**

**A. Standard of Review**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

3

at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Breach of Contract

Alcander alleges that he had a contract with Creighton which was breached when, among other things, the university dismissed him without fair process and proceedings. Filing No. 8 at 7–8. In support of this allegation, Alcander cites various, although not specifically identified policies and procedures relating to the academic appeal processes. *Id.* at 6–7. Defendants argue that this claim must fail because Alcander did not set forth "definite and certain" terms relating to the student misconduct disciplinary proceeding sufficient to establish a contract. Filing No. 10 at 7. In the alternative, Defendants argue that Alcander can't establish a breach because he hasn't shown specific procedural violations. The Court finds that at the pleading stage, such specificity is often not feasible, nor warranted.

4

Under Nebraska law, a plaintiff must show: "existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000). Nebraska courts recognize that a contract "may be express, implied, written, or oral." *Armstrong v. Clarkson Coll.*, 901 N.W.2d 1, 17 (Neb. 2017). In addition, the Eighth Circuit Court of Appeals has recognized that the "relationship between a university and its students is contractual in nature." *Corso v. Creighton Univ.*, 731 F.2d 529, 531 (8th Cir. 1984) (applying Nebraska law); *Armstrong*, 901 N.W.2d at 17 (finding an implied contract created by the student handbook). However, if the student handbook contains a disclaimer indicating no contract exists, Nebraska courts treat the policies included in the handbook as terms in an implied in fact contract, "where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract." *Armstrong*, 901 N.W.2d at 17.

At this early stage in the pleadings, and without the benefit of discovery, Alcander admits he is not in possession of all the handbooks, policies, codes of conduct, etc. that would form the basis of a contract between a student and a university. Construing the facts in the light most favorable to Alcander, the Court finds that there is enough information in the Amended Complaint to survive a motion to dismiss. Alcander has set forth policy language that is minimally sufficient to establish at least an implied contract. Alcander further alleges various improprieties that would establish a breach of such an agreement. Therefore, Defendants' Motion to Dismiss the breach of contract claim is denied.

### C. Title VI – Race, Color, and National Origin Discrimination

Defendants next argue that Alcander's claim of discrimination based on his national origin should be dismissed because Alcander cannot show he was "qualified," or that he was treated differently than similarly situated students outside his protected class.

Title VI prohibits discrimination on the basis of race in federally funded programs. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). To state a claim under Title VI, a plaintiff must show "that his race, color, or national origin motivated the defendant's discriminatory conduct." *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 355 (8th Cir. 2020). When there is no direct evidence of discrimination, courts apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, Alcander must state a *prima facie* case showing: "(1) he is a member of a protected class; (2) he suffered an adverse action at the hands of defendants in pursuit of his education; (3) he was qualified to continue in pursuit of his education; and (4) he was treated differently from similarly situated students outside his protected class." *Rowles*, 983 F.3d at 355.

However, at the pleading phase, a plaintiff need not plead facts establishing a prima facie case of discrimination, nor does he need to "set forth a detailed evidentiary proffer in a complaint." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) (citations omitted). The prima facia model is an evidentiary, not a pleading, standard. *Id.* However, the elements of a prima facie case are not irrelevant to a plausibility determination. *Id.*

6

Considering the prima facie elements of the Title VI claim, the Court finds Alcander has pled sufficient facts in the Amended Complaint to move forward on this claim. Alcander has established pretty clearly, he is a member of a protected class, and he did suffer and adverse action when he was dismissed from the dentistry program.

A little less clear, is evidence supporting his allegation that he was qualified to continue in his education. However, Alcander does submit that he was released to return to school without limitations on May 11, 2021, establishing he was qualified (at least from a medical standpoint) for the program. Filing No. 8 at 2. Plaintiff also provided an undated patient review that was very positive. *Id.* at 5. On August 24, 2021, he received an academic misconduct hearing notice on the same day he tested positive for COVID-19.

Whether he was treated differently than other similarly situated students outside of his protected class is largely dependent upon information that can only be ascertained through the discovery process. Specifically, what students were dismissed from the Dentistry program, and their ethnic origin is generally confidential information that other students would not have access to outside of the litigation process. To be sure, Alcander will have to discover and establish this information if he wants to survive a motion for summary judgment. However, he has pled sufficient facts to survive a motion to dismiss on this claim.

**D. Intentional Interference with a Contract and/or Business Expectancy**

Alcander's next cause of action is tortious or intentional interference with a contract, another state law claim. Alcander alleges that Dr. Franco interfered with his contract with Creighton insofar as Dr. Franco submitted false claims regarding Alcander's performance in the dental program which led to his dismissal. Filing No. 8 at 13. Alcander

7

further alleges that Dr. Franco was motivated by racial animus or by Alcander's medically necessary absences from the dentistry program. *Id*.

To recover on a tortious interference of contract claim under Nebraska law, Alcander must show: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Macke v. Pierce*, 661 N.W.2d 313, 317 (Neb. 2003).

Not every act of interference with a contract is actionable, only unjustified interference. *Id.* To determine whether interference is justified Nebraska courts consider "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Id.* at 317–18. Generally, a party cannot be liable for interfering with its own contract. *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1018 (D. Neb. 2019) *citing Huff v. Swartz*, 606 N.W.2d 461, 467 (Neb. 2000); *Bussing v. COR Clearing, LLC*, 20 F. Supp. 3d 719, 737 (D. Neb. 2014) *abrogated on other grounds by Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149 (2018)).

Defendants allege that Dr. Franco could not commit tortious interference because 1) there was no contract, and 2) he was an agent/employee of Creighton, and a party cannot interfere with its own contract. Alcander counters this claim should survive because he has alleged that Dr. Franco "was serving a master other than the employer

or was pursuing 'some benefit to himself, at odds with the interests' of the employer." Filing No. 11 at 9 (*citing Bussing*, 20 F. Supp. 3d at 738). However, Alcander has only pled that Dr. Franco was motivated to make false accusations against Alcander because of his race or in retaliation for him requesting medical leave.

In determining whether an agent or other third-party tortiously interferes with a contract or business relationship, a court distinguishes between conduct within the general scope of the interferer's agency and conduct in furtherance of an individual or private purpose unrelated to the principal's interests. *Bussing*, 20 F. Supp. 3d at 737. If the alleged interferer acts within the general scope of their authority for the principal, then the law recognizes the conduct to be consistent with the principal's interests. *Bussing*, 20 F. Supp. 3d at 738. For Alcander's tortious interference claim to survive dismissal, he must allege facts showing Dr. Franco was serving a principal other than the university or pursuing a benefit for himself that was at odds with Creighton's interests.

Taking the pleadings as true, Alcander has failed to plead facts from which a reasonable inference could be drawn that Dr. Franco's actions were not taken on behalf of Creighton. Even if his actions were taken out of ill-will or racial animus, he was still acting in his capacity as Associate Dean of Clinical Services. There is no allegation that Dr. Franco personally benefited from Alcander's dismissal other than some presumed prurient reward in getting rid of Alcander from the program. Similarly, there is no allegation that Dr. Franco's actions of fabricating information about Alcander was done for the benefit of any other entity. Therefore, there is no claim for tortious interference here and this claim will be dismissed.

9

### E. Negligent misrepresentation

Next Defendants seek dismissal of Alcander's negligent misrepresentation claim. Alcander claims that after his car accident he was in "regular contact" with Dr. Colette O'Meara-McKinney regarding his condition and she approved his absences associated with his medical treatment "explaining that his medical absences were excused and would not negatively impact his standing at Creighton." Filing No. 8, at 3, 14. Alcander claims he relied on her statements and didn't seek other accommodations for his absences. Later he found out the statements by Dr. O'Meara-McKinney were false when he went in front of the academic misconduct committee who relied on, at least in part, these absences for the basis of his dismissal from the dentistry program.

To recover on a negligent misrepresentation claim under Nebraska law, Alcander must show: (1) a representation was made; (2) the representation was false; (3) the representation was made recklessly or negligently as to its truth; (4) the representation was made with the intention that it should be relied upon; (5) the representation was relied upon; and (6) damages were suffered as a consequence. *Nelson v. Wardyn*, 820 N.W.2d 82, 87 (Neb. Ct. App. 2012). Defendants correctly point out that negligent misrepresentation is a subspecies of fraud, and as such, pursuant to Fed. R. Civ. P. 9(b), a pleading must "state with particularity the circumstances constituting the fraud." *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 805 (8th Cir. 2013). Defendants argue that Alcander's amended complaint fails to meet these rigorous standards. However, as the district court points out in *Olsen*, 392 F. Supp. 3d at 1019, "the particular circumstances constitution fraud is interpreted in harmony with the principles of notice pleading." *Citing Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

> Generally, a pleading alleging negligent misrepresentation must include the time, place, and contents of the false representations, the identity of the entity or source of the misrepresentation, and what was obtained or given up as a consequence of the false representation. The heightened pleading standard for complaints of fraud or misrepresentations is intended to allow a quick and specific response to potentially damaging allegations.

*Olsen*, 392 F. Supp. 3d at 1019 (internal citations omitted).

Defendants allege that Alcander did not meet the Rule 9(b) heightened pleading standard because he doesn't specify when, where or how the representations were made. Although Alcander may not have given a specific date Dr. O'Meara-McKinney allegedly made the false statement(s) that his medical absences would be excused, the Court finds that the amended complaint alleges sufficient facts for the Defendants to identify the time, place, content and source of the misrepresentations, and the consequences of the misrepresentations to Alcander (i.e. referral to the academic misconduct committee). Therefore, Defendants' motion to dismiss s denied with regard to the negligent misrepresentation claim.

## F. Request for declaratory judgment

Finally, Alcander has asked this Court to declare the rights of the parties under the alleged contract and to reinstate him as a student in the School of Dentistry or mandate the return of his tuition and fees.

Defendants claim that because Alcander has failed to plead the existence of a valid and enforceable contract, the Court cannot declare those rights. The Court has previously determined that at this early stage, Alcander has pled sufficient facts relating to a breach of contract claim. Although the Court is not convinced that declaratory judgment is the appropriate remedy and it may be duplicative, it will not dismiss this cause of action at this point.

**THEREFORE, IT IS ORDERED:**

1) Defendants' first Motion to Dismiss, Filing No. 3, is denied as moot in light of the filing of Plaintiff's Amended Complaint Filing No. 8.

2) Defendants' Motion to Dismiss the Amended Complaint, Filing No. 9, is granted in part and denied, in part.

3) Plaintiff's claim for tortious or intentional interference with a contract or business enterprise (Claim # 5) is dismissed.

4) Defendants' Motion to Dismiss is denied as to all other claims.

5) Defendants shall answer the Amended Complaint within 14 days of the date of this order.

Dated this 2nd day of June, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge